**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sherry Simms, on behalf of herself and others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>Nationstar Mortgage LLC,<br><br>Defendant. | No. CV-16-03800-PHX-JAT<br><br>**ORDER** |

Plaintiff Sherry Simms filed this putative class action against Defendant Nationstar Mortgage, LLC for a violation of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681b (2012). Pending before the Court is Defendant's Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction, ("Defendant's Motion," Doc. 7). Plaintiff filed a Response, (Doc. 9), and Defendant filed a Reply, (Doc. 11). Neither party requested oral argument. The Court now rules on Defendant's Motion.

**I.   BACKGROUND**

On or about September 3, 2009, Plaintiff and her spouse jointly filed for Chapter 13 bankruptcy and included Defendant as a creditor. (Doc. 1 at ¶¶ 23, 24). Defendant voluntarily joined as a creditor in Plaintiff's bankruptcy and made filings in the case. (*Id.* at ¶¶ 24, 25). Defendant was also served notice of Plaintiff's bankruptcy discharge, which occurred on January 21, 2015. (*Id.* at ¶¶ 25, 27, 28).

On or about June 21, 2016, Defendant made an account inquiry and accessed

Plaintiff's Trans Union credit report. (*Id.* at ¶ 29). Defendant obtained access by indicating it had a permissible purpose to view the credit report as part of an "account review." (*Id.*). However, Plaintiff alleges that Defendant's purpose for the review was impermissible as Plaintiff neither conducted business nor incurred "any additional financial obligations with Defendant since the date of the discharge of her bankruptcy." (*Id.* at ¶¶ 30, 31).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Federal Rule") 12(b)(1), a litigant may seek dismissal of an action for lack of standing because "Article III standing is a species of subject matter jurisdiction." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1227 (9th Cir. 2011) (citation omitted). To survive a defendant's motion to dismiss, the plaintiff has the burden of proving jurisdiction. *Tosco v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2000). To demonstrate Article III standing, a plaintiff must show: "(1) an injury-in-fact, (2) causation, and (3) a likelihood that the injury will be redressed by a decision in the plaintiff's favor." *Human Life of Wash. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010) (quotations omitted).

An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992) (citations and quotations omitted). In *Spokeo, Inc. v. Robins*, the Supreme Court further emphasized that "an injury in fact must be both concrete *and* particularized," even in the context of a statutory violation. 136 S. Ct. 1540, 1548 (2016).

An injury is particularized if it "affect[s] the plaintiff in a personal and individual way," while an injury is concrete if it is "real, and not abstract." *Id.* (quotations and citations omitted). Both tangible and intangible injuries can be concrete. *Id.* at 1549. "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles. *Id.* Thus, a court should "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been

regarded as providing a basis for a lawsuit in English or American courts." *Id.* However, Congress's "role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Thus, a plaintiff may not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*

The distinction between a statute simply conferring a right-to-sue as opposed to designating an injury-in-fact for Article III standing purposes is particularly prevalent where the right is procedural rather than substantive. *Id.* at 1549–50. For example, a procedural violation will involve concrete harm if it entails a "degree of risk" of real harm. *Id.* at 1549 (recognizing that a "risk of real harm" may satisfy the concreteness requirement). A "risk of real harm" means that a defendant's procedural violation involves a risk that plaintiff will suffer some further harm than the procedural violation that is difficult to prove or quantify. *Id.* (alluding to slander *per se* and libel). The Court also provided an example of a nonconcrete harm whereby a defendant disseminates inaccurate zip codes in violation of an FCRA provision designed to protect consumers from the dissemination of inaccurate personal information. *Id.* at 1550. The Court recognized this procedural violation would likely not designate an injury-in-fact to the consumers because it would not possibly result in harm. *Id.*

### III. ANALYSIS

Defendant claims that Plaintiff fails to allege a concrete harm and, thus, lacks standing. (Doc. 7 at 9–12). Plaintiff rejoins that Defendant's impermissible access of her credit report establishes a concrete harm, and it is unnecessary to allege any additional harm to have standing. (Doc. 9 at 14–15).

Congress enacted the FCRA in 1970 in recognition of "the need to 'ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'" *Syed v. M-I, LLC*, No. 14-17186, 2017 WL 1050586, at *2 (9th Cir. Mar. 20, 2017) (quoting *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007)); *see also*

*Zamora v. Valley Fed. Sav. & Loan Ass'n of Grand Junction*, 811 F.2d 1368, 1370 (10th Cir. 1987) ("By enacting the FCRA, Congress intended to prevent invasions of consumers' privacy."). Indeed, the FCRA makes explicit its goal to protect the "consumer's right to privacy," in part by ensuring the "confidentiality" of consumers' credit information. *See* 15 U.S.C. § 1681. In furtherance of this goal, Congress limited the circumstances in which a consumer report may be obtained. *Id.* § 1681b. In particular, the FCRA provides:

> A person shall not use or obtain a consumer report for any purpose unless--
>
> (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
>
> (2) the purpose is certified in accordance section 1681e of this title by a prospective user of the report through a general or specific certification.

*Id.* § 1681b(f).

Defendant argues that Plaintiff's "purely procedural claim under the FCRA" is insufficient to confer standing. (Doc. 7 at 9). However, this Court finds Plaintiff's claim is not "purely procedural" but, rather, substantive. As the Ninth Circuit Court of Appeals recognized in *Syed*, Congress conferred a substantive right to privacy to consumers with regard to use and access of their credit reports. *See* 2017 WL 1050586, at *4 ("Congress has recognized the harm such violations [of § 1681b's restrictions on use and procurement of credit reports] cause, thereby articulating a 'chain[] of causation that will give rise to a case or controversy.'" (quoting *Spokeo*, 136 S. Ct. at 1549)). Therefore, Defendant's alleged impermissible use of Plaintiff's credit report confers Article III standing for Plaintiff to bring this lawsuit.

Defendant relies heavily on *Bultemeyer v. CenturyLink, Inc.*, (Doc. 11 at 3–5), in which a different judge in this district reached the opposite conclusion. No. CV-14-02530-PHX-SPL, 2017 WL 634516, at *4 (D. Ariz. Feb. 15, 2017). In *Bultemeyer*, the plaintiff visited the defendant's website to receive a quote for internet

services. *Id.* at *1. Before submitting her payment information for processing, the plaintiff agreed to various terms and conditions that triggered the defendant to run a credit report on the plaintiff. *Id.* The plaintiff sued the defendant under 15 U.S.C. § 1681b(f), alleging that the defendant had no permissible purpose for running her credit report because she had never submitted her payment information required to initiate the business transaction. *Id.* The *Bultemeyer* court held that it lacked subject matter jurisdiction over the case because the plaintiff's claim was a "bare procedural violation" of the FCRA and the plaintiff failed to show a risk of real harm. *Id.* at *3–4. This Court reaches a different conclusion than that reached in *Bultemeyer*.

First, *Bultemeyer* relies on cases involving less significant invasions of privacy than the impermissible use or procurement of a credit report. For example, in *Braitberg v. Charter Commc'ns, Inc.*, a cable company retained personally identifiable information in violation of the Cable Communications Policy Act, which imposed on cable companies a duty to destroy such information after a company's reason for holding onto the information ceased. 836 F.3d 925, 927 (8th Cir. 2016). The Eighth Circuit Court of Appeals held that the plaintiff lacked standing because "[a]lthough there is a common law tradition of lawsuits for invasion of privacy, the *retention* of information lawfully obtained, without further disclosure, traditionally has not provided the basis for a lawsuit in American courts." *Id.* at 930 (citations omitted) (emphasis added). Thus, *Braitberg* involved the retention of consumer information rather than the impermissible access of information. *See Bultemeyer*, 2017 WL 634516, at *3 (citing *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909 (7th Cir. 2017), which involves similar facts as *Braitberg*); *see also Green v. RentGrow, Inc.*, No. 2:16cv421, 2016 WL 7018564, at *6 (E.D. Va. Nov. 10, 2016) (distinguishing *Braitberg* in a similar manner).

Next, this Court reaches a different conclusion regarding "the judgment of Congress" than the *Bultemeyer* court. *See Spokeo*, 136 S. Ct. at 1544. Despite recognizing that "Congress enacted the FCRA to . . . protect consumer privacy," the *Bultemeyer* court minimized Congress's intentions because the protection of consumer privacy was not a

"primary goal" of the FCRA. 2017 WL 634516, at *3 n.3 (quotations omitted). However, the Supreme Court has stated that protection of consumer privacy was a primary goal of Congress in enacting the FCRA. *See Safeco*, 551 U.S. at 52. Invasion of privacy is a form of harm that has been traditionally recognized as providing a basis for a lawsuit, *see* Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890); *see also* Restatement (Second) of Torts § 652A cmt. a (Am. Law Inst. 1977), and invasion of privacy is a harm that Congress sought to protect against in enacting Section 1681b(f), *see, e.g.*, S. Rep. No. 104-185, at 34–35 (1995). Thus, in examining "both history and the judgment of Congress," *Spokeo*, 136 S. Ct. at 1543, a defendant's impermissible use or access of a plaintiff's credit report satisfies the injury-in-fact requirement necessary for Article III standing.

Finally, *Bultemeyer* is factually distinguishable from this case. In *Bultemeyer*, the plaintiff had agreed to terms and conditions, which presumably included notice that the defendant would run the plaintiff's credit report. 2017 WL 634516, at *1. Thus, the *Bultemeyer* court followed a case in which a defendant failed to provide notice in the manner prescribed by the FCRA, but the plaintiff nevertheless agreed to the defendant's procurement of the credit report. *Id.* at *3 (citing *Smith v. Ohio State Univ.*, 191 F. Supp. 3d 750 (S.D. Ohio 2016)). Thus, in this light, *Bultemeyer* involved a plaintiff who had authorized the defendant to access her credit report but was suing because defendant failed to procure the plaintiff's permission in the statutorily prescribed manner. Here, however, there is no allegation that Plaintiff provided any permission for Defendant to access her credit report. (*See* Doc. 1 at ¶ 30).

Besides *Bultemeyer*, Defendant cites other similarly unpersuasive cases. For example, Defendant cites *Eaton v. Central Portfolio Control, Inc.* for the statement that "'[s]imply accessing another's credit report in good faith . . . does not . . . give rise to an [invasion of privacy or] intrusion upon seclusion claim.'" (Doc. 7 at 9 (quoting Civil. No. 14-747 (DSD/FLN), 2014 WL 6982807, at *3 (D. Minn. Dec. 9, 2014))). However, *Eaton* involved a defendant accessing the plaintiff's credit report for a

*permissible* purpose. 2014 WL 6982807, at *2. Unlike the defendant in *Eaton*, Defendant is alleged to have accessed Plaintiff's credit report for an *impermissible* purpose, which intuitively involves a greater breach of privacy.[1] (Doc. 1 at ¶ 30).

Accordingly, Plaintiff has alleged a concrete and particularized harm, sufficient to allege an injury-in-fact and confer standing under Article III. Additionally, because Defendant's arguments that putative class members lack standing rely upon the Court finding that Plaintiff lacks standing, the Court will not address Defendant's arguments as to the putative class members.

## IV. FEDERAL RULE 12(b)(6) MOTION

Defendant also appears to attack the validity of Plaintiff's underlying accusations. For example, Defendant states that "Plaintiff's theory of liability hinges on the false accusation that [Defendant] lacked *any* permissible purpose to perform an account-review of her consumer report post-discharge, despite the continued existence of Plaintiff's mortgage account with [Defendant] and the remaining mortgage lien on the property serving as collateral for the account." (Doc. 7 at 8). Because Defendant's argument relates to whether Plaintiff has actually stated a claim under the FCRA, such an argument is more appropriate for a Federal Rule 12(b)(6) motion to dismiss rather than a Federal Rule 12(b)(1) motion to dismiss. The Court suspects that Defendant may have sought to align this case with those cited above, in which the defendants had a permissible purpose for accessing the plaintiff's credit report, *see, e.g.*, *Saumweber*, 2015 WL 2381131; *Hutar*, 2015 WL 4868886. However, Plaintiff's Complaint alleges facts indicating that Defendant accessed her credit report for an impermissible purpose. (Doc. 1 at ¶¶ 21–35). Further, Defendant fails to cite *any* authority for its argument that Defendant had a

---

[1] This distinction applies to many other cases cited by Defendant. *See, e.g.*, *Saumweber v. Green Tree Servicing, LLC*, No. 13-cv-03628 (SRN/SER), 2015 WL 2381131, at *3–6 (D. Minn. May 19, 2015) (finding that a defendant accessed the plaintiff's credit report for a *permissible* purpose); *Hutar v. Capital One Fin. Corp.*, Civil No. 15-2100 (MJD/JJK), 2015 WL 4868886, at *6 (D. Minn. July 27, 2015) (finding that the defendants had a "good faith belief that they were authorized to pull the identified consumer's credit report because [the plaintiff] initiated a credit transaction, and the allegations show that the moving defendants pulled her credit report as part of that transaction").

permissible purpose for accessing Plaintiff's credit report. Thus, the Court will decline to consider this argument for purposes of resolving Defendant's Motion.

## V. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant Nationstar Mortgage LLC's Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction, (Doc. 7), is **DENIED**.

Dated this 18th day of April, 2017.

James A. Teilborg
Senior United States District Judge